No. 22-50110

# In the United States Court of Appeals for the Fifth Circuit

ISABEL LONGORIA, ET AL.,

*Plaintiffs-Appellees*,

*v.*

WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 5:21-cv-01223-XR

## DEFENDANT-APPELLANT ATTORNEY GENERAL PAXTON'S OPPOSED EMERGENCY MOTION FOR STAY PENDING APPEAL AND ADMINISTRATIVE STAY

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

Benjamin D. Wilson
Deputy Solicitor General

Cody Rutowski
Assistant Solicitor General
Cody.Rutowski@oag.texas.gov

Counsel for Appellant
Warren K. Paxton, in his official
capacity as the Attorney General of
Texas

# Certificate of Interested Persons

No. 22-50110

Isabel Longoria, et al.,

*Plaintiffs-Appellees*,

*v.*

Warren K. Paxton, in his official capacity as the Attorney General of Texas,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant Warren K. Paxton, sued only in his official capacity as the Attorney General of Texas, is a governmental party and thus need not furnish a certificate of interested persons.

/s/ Cody Rutowski
Cody Rutowski
*Counsel of Record for*
*Appellant Warren K. Paxton,*
in his official capacity as the
Attorney General of Texas

i

# Table of Contents

Page

Certificate of Interested Persons ..............................................i

Introduction and Nature of Emergency.................................1

Statement of the Case .............................................................2

Statement of Jurisdiction ........................................................7

Argument..................................................................................7

    I.    The District Court's Injunction Violates the *Purcell* Principle. .................7

    II.    The Balance of the Traditional Stay Factors Weighs in Favor of Staying the District Court's Injunction. .................................. 11

        A.    The Attorney General is likely to succeed on the merits................... 11

            1.    Section 276.016(a) does not violate the First Amendment. .........12

            2.    Plaintiffs cannot overcome sovereign immunity......................... 15

        B.    The Attorney General will suffer irreparable harm if the injunction is not stayed pending appeal. ........................... 18

        C.    The balance of the remaining stay factors favor the Attorney General. ...................................................................... 18

Conclusion...............................................................................20

Certificate of Conference .......................................................21

Certificate of Compliance with Rule 27.3 ............................. 21

Certificate of Service...............................................................22

Certificate of Compliance ...................................................... 22

## Introduction and Nature of Emergency

"The Supreme Court has 'repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566 (5th Cir. 2020) (per curiam) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam)); *see also, e.g.*, *Merrill v. Milligan*, Nos. 21-1086 & 21-1087, 2022 WL 354467, at *1 (U.S. Feb. 7, 2022) (Kavanaugh, J., concurring). But that is precisely what the district court has done here.

On February 11, 2022, the district court enjoined the enforcement of section 276.016(a)(1) of the Texas Election Code. That section reasonably prohibits official government solicitations of applications to vote by mail. Such solicitations would nudge voters from in-person voting to mail-in voting, decreasing election security and increasing logistical challenges. Such solicitations also run the risk of convincing voters who are not qualified to vote by mail to attempt to do so, which could potentially lead to criminal liability for those voters.

The district court concluded that section 276.016(a)(1) likely "constitutes unlawful viewpoint discrimination in violation of the First and Fourteenth Amendments, both facially and as applied to Plaintiffs' speech." App.40. But the Attorney General is likely to succeed on appeal both because section 276.016(a)(1) regulates only government speech, which is not protected by the First and Fourteenth Amendments, and because he is protected by sovereign immunity.

Moreover, Texas's 2022 primary-election date is less than two weeks away. In-person early voting started two days ago. As particularly relevant here, applications

to vote by mail must be received by county election officials by this Friday, February 18—two days from now, and only a week after the district court entered its injunction. To avoid the disruption and confusion risked by the injunction of state election laws regulating government communications about applications for mail-in ballots on the eve of the deadline for those applications, the Attorney General respectfully requests an emergency stay pending appeal by **Thursday, February 17, 2022, at 5:00 p.m. Because the injunction is effective immediately, the Attorney General respectfully requests an immediate administrative stay while the Court considers this motion**. *E.g.*, *Richardson v. Hughs*, No. 20-50774 (5th Cir. Sept. 11, 2020) (per curiam); *Tex. Democratic Party v. Abbott*, No. 20-50407, 2020 WL 2616080, at *1 (5th Cir. May 20, 2020) (per curiam).

## Statement of the Case

In September 2021, the Texas Legislature passed An Act Relating to Election Integrity and Security, S.B.1, 87th Leg., 2d C.S. (2021), often referred to as "SB1." SB1 contains many provisions addressing a variety of election issues, including increasing the availability of early voting. *See id.* §§ 3.09, .10 (codified at Tex. Elec. Code §§ 85.005(c), .006(e)). In this case, Plaintiffs challenge only one provision of SB1: the portion of section 7.04 that added section 276.016(a)(1) to the Election Code.

Under section 276.016(a)(1), "[a] public official or election official commits an offense if the official, while acting in an official capacity, knowingly . . . solicits the submission of an application to vote by mail from a person who did not request an application." Tex. Elec. Code § 276.016(a)(1). Section 276.016(a)(1) has a number

of important limitations. First, it applies only to "[a] public official or election official." *Id.* § 276.016(a). Second, it applies only when the official is "acting in an official capacity," not when the official is acting in a personal or individual capacity. *Id.* By contrast, if an official stands for election, section 276.016(a)(1) does not apply when the official is "acting in the official's capacity as a candidate for public elective office." *Id.* § 276.016(e)(2). Third, section 276.016(a)(1) applies only when the official "solicits the submission of an application," not when the official merely explains a voter's options. *Id.* § 276.016(a)(1). As a result, it does not apply when the official "provide[s] general information about voting by mail, the vote by mail process, or the timelines associated with voting to a person or the public." *Id.* § 276.016(e)(1).

Plaintiff Isabel Longoria, the Elections Administrator for Harris County, originally challenged section 276.016(a)(1) on September 3, 2021. *See* Complaint at 55, 63-66, *La Unión Del Pueblo Entero v. Abbott*, No. 5:21-cv-00844-XR, (W.D. Tex. Sept. 3, 2021), ECF No. 1 ¶¶ 185-87, 223-29. Recognizing that she did not need preliminary injunctive relief, Longoria negotiated away her right to seek preliminary injunctive relief before the March primary election in exchange for an expedited trial schedule that would have concluded before the November general election. *See* Opposed Motion to Stay at Ex. 1, *Longoria v. Paxton*, No. 5:21-cv-01223 (W.D. Tex. Jan. 4, 2022), ECF No. 9-1 at 32-33 ("On behalf of LUPE plaintiffs, it is correct that we are not planning to pursue preliminary injunctive relief prior to the March primary."). Perhaps regretting this concession, Longoria voluntarily dismissed her first lawsuit. *See* Notice of Voluntary Dismissal, *La Unión Del Pueblo Entero v. Abbott*, No. 5:21-cv-00844 (W.D. Tex. Dec. 1, 2021), ECF No. 138.

Longoria and Plaintiff Cathy Morgan, a volunteer deputy registrar in Travis and Williamson Counties, filed this lawsuit against the Attorney General once again raising a First Amendment challenge to section 276.016(a)(1) on December 10, 2021, Complaint, *Longoria v. Paxton*, No. 5:21-cv-01223 (W.D. Tex. Dec.10, 2021), ECF No. 1[1]—less than three months before the March 2022 primary election date, Tex. Elec. Code § 41.007(a), (c), and less than a month before voters could first submit an application for a mail-in ballot, *id.* §§ 84.001(e), .007. Before Plaintiffs served their original complaint, Plaintiffs amended their complaint on December 27, 2021, to add three district attorneys as defendants and alter the claim against the Attorney General. *See* App.248.

Plaintiffs' first amended complaint includes two counts. In Count I, both Longoria and Morgan seek to prevent three local district attorneys from criminally prosecuting them for violations of section 276.016(a)(1). *See* App.255-57. In Count II, Longoria (but not Morgan) seeks to prevent the Attorney General from bringing a civil enforcement action against her for violations of section 276.016(a)(1). *See* App.257-58; Tex. Elec. Code § 31.129(b)-(c) (providing that certain election officials "may be liable to this state for a civil penalty," including "termination of the person's employment and loss of the person's employment benefits," "if the official . . . violates a provision of this code").

---

[1] For the remainder of this motion, all citations to documents by ECF number refer to docket entries below in this litigation, *Longoria v. Paxton*, No. 5:21-cv-01223 (W.D. Tex.).

Notwithstanding Longoria's previous agreement not to seek injunctive relief, Plaintiffs moved for a preliminary injunction on both counts of their amended complaint on December 28, 2021. App.43-82. Although Plaintiffs requested preliminary relief before the March 2022 primary, *see* App.50, they did not serve the Attorney General with the First Amended Complaint and the preliminary-injunction motion until January 3, 2022, *see* ECF No. 15—less than two months before the March 2022 primary election date, Tex. Elec. Code § 41.007(a), (c), and two days after voters could first submit an application for a mail-in ballot, *id.* §§ 84.001(e), .007.

The Attorney General moved to dismiss Plaintiffs' amended complaint or, in the alternative, abstain on January 24, 2022. App.262-79. That motion is still pending, and briefing on that motion will conclude no later than March 2, 2022. ECF No. 28 at 2.

The district court held an evidentiary hearing on Plaintiffs' motion for a preliminary injunction on February 11, 2022. *See* ECF No. 52. That night, the district court granted Plaintiffs' motion. App.2-41.[2] The district court concluded that Plaintiffs caried their burden of showing that the court had subject matter jurisdiction and had established that there was "a substantial likelihood that they will succeed on the merits of their claims that the anti-solicitation provision set forth in Section 276.016(a)(1), and as enforced through Section 31.129, constitutes unlawful

---

[2] The district court's order granting Plaintiffs' motion for a preliminary injunction appears in two separate but apparently identical docket entries. *Compare* App.2-41, *with* ECF No. 56. For simplicity's sake, the Attorney General has included only the first of those two docket entries in the appendix to this motion. *See* App.2-41.

viewpoint discrimination in violation of the First and Fourteenth Amendments, both facially and as applied to Plaintiffs' speech." App.40. The district court also concluded "that the irreparable injury Plaintiffs will suffer absent injunctive relief substantially outweighs any harm potentially suffered by Defendants, and that a preliminary injunction will serve the public interest." App.40.

Based on those conclusions, the district court enjoined the district attorney defendants from enforcing section 276.016(a)(1) against Plaintiffs and enjoined all defendants from enforcing section 276.016(a)(1) using section 31.129 "pending final resolution of this case." App.40. The district court further ordered "that Defendants may not criminally or civilly prosecute Plaintiffs for any violations of Sections 276.016(a)(1) and 31.129 of the Election Code committed during the pendency of this lawsuit, even if Sections 276.016(a)(1) and 31.129 are later found to be constitutional." App.41.

During the evidentiary hearing, the Attorney General moved to stay any preliminary injunction the court was contemplating pending appeal or for at least seven days to allow the Attorney General to seek a stay from this Court. *See* App.41. The seven-day stay the Attorney General requested in the alternative would have been enough to delay the effective date of any such injunction until after the deadline for county election officials to receive applications for mail-in ballots for the March 2022 primary. But the district court denied the motion to stay and ordered that the injunction take effect immediately, App.40-41—changing Texas election law barely two weeks before the primary and only a week before the deadline for county election officials to receive applications for mail-in ballots.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's preliminary injunction.

## ARGUMENT

Because the district court enjoined a provision of Texas election law intended to avoid confusion about voting by mail during an election and only days before the deadline to submit applications to vote by mail, this Court should stay the district court's injunction under the *Purcell* principle.

The traditional stay factors also weigh in favor of a stay here. Courts consider four factors in assessing whether to stay a district court order pending appeal. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). The two "most critical" factors, *Nken*, 556 U.S. at 434, are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits," and "(2) whether the applicant will be irreparably injured absent a stay." *Id*. at 426. Less "critical" are "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies." *Id*. at 426, 434. The balance of these factors favors a stay of the district court's preliminary injunction.

## I.    The District Court's Injunction Violates the *Purcell* Principle.

"[F]ederal district courts ordinarily should not enjoin state election laws in the period close to an election." *Merrill*, 2022 WL 354467, at *1 (Kavanaugh, J. concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). And "federal appellate courts should stay injunctions when, as here, lower federal courts contravene

that principle," known as the *Purcell* principle. *Merrill*, 2022 WL 354467, at *1 (Kavanaugh, J. concurring).

In *Purcell v. Gonzalez*, 549 U.S. 1, the Supreme Court relied on "considerations specific to election cases" to caution against federal court interference with impending state elections. *Id.* at 4. It explained that "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Id.* at 4-5. These risks apply not only to broad relief but also to "seemingly innocuous late-in-the-day judicial alterations to state election laws" because even those "can interfere with administration of an election and cause unanticipated consequences." *Democratic Nat'l Comm. v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). To account for those risks, a federal court considering a request to enjoin state election laws must consider potential conflicts with the timing of elections and appellate proceedings. *See Purcell*, 549 U.S. at 4-5.

This Court takes these principles seriously. In the 2020 election cycle, this Court repeatedly stayed injunctions that would have interfered with Texas elections. *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 244 (5th Cir. 2020) (Higginbotham, J., concurring); *Tex. All. for Retired Ams.*, 976 F.3d at 566-67; *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 411-12 (5th Cir. 2020); *Mi Familia Vota v. Abbott*, 834 F. App'x 860, 863 (5th Cir. 2020) (per curiam).

In this case, Texas Secretary of State's Director of Elections, Brian Keith Ingram, has explained that "changing the election procedures in the middle of an election cycle can create considerable confusion and frustration among voters and local

election officials." App.180. Drawing on past experience in which last-minute injunctions confused, scared, and angered voters, *see* App.180, Ingram has explained what is at stake in this case:

> If, in the middle of an election, election officials began soliciting the submission of applications to vote by mail from people who did not request applications, despite a high-profile law prohibiting that practice, I would expect at least some voters to be confused and lose trust in the election process.

App.180. Losing voter trust is always a problem, but it is a particularly big problem today. "Voter trust is considerably lower today than it has been in the past." App.180. "Further eroding voter trust could have serious consequences." App.180.

Although the district court acknowledged the *Purcell* principle, the court refused to apply it. App.37-40. According to the district court, "the *Purcell* principle's logic extends only to injunctions that affect the mechanics and procedures of election law applicable to voting." App.38. The district court also suggested that voter confusion and distrust were not enough to justify invoking the *Purcell* principle unless a State can show that an eleventh-hour injunction would actually disenfranchise voters. App.39. But the stay the Supreme Court recently entered in *Merrill v. Milligan*, No. 21-1086, 2022 WL 354467 (U.S. Feb. 7, 2022), indicates that the *Purcell* principle is not so narrowly confined. Indeed, *Purcell* itself warns of the risk of "voter confusion," *Purcell*, 549 U.S. at 4-5, and the Supreme Court has since reiterated that the purpose of the *Purcell* principle is "to avoid . . . judicially created confusion," *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

More fundamentally, the point of the *Purcell* principle is to avoid "[l]ate judicial tinkering with election laws," which "can lead to disruption and to unanticipated

and unfair consequences for candidates, political parties, and voters, among others." *Merrill*, 2022 WL 354467, at \*2 (Kavanaugh, J., concurring); *cf. Democratic Nat'l Comm.*, 141 S. Ct. at 30 (Gorsuch, J., concurring) ("Last-minute changes to longstanding election rules risk other problems too, inviting confusion and chaos and eroding public confidence in electoral outcomes."); *id.* at 31 (Kavanaugh, J., concurring) (describing the *Purcell* principle as "an important principle of judicial restraint" that "not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election.").

The district court not only erred by enjoining a provision of Texas election law during an election, but also erred by "affording relief that the plaintiffs themselves did not ask for in their preliminary injunction motion[]." *Republican Nat'l Comm.*, 140 S. Ct. at 1207. Specifically, the district court ordered "that Defendants may not criminally or civilly prosecute Plaintiffs for any violations of Sections 276.016(a)(1) and 31.129 of the Election Code committed during the pendency of this lawsuit, even if Sections 276.016(a)(1) and 31.129 are later found to be constitutional." App.41. But as the proposed order Plaintiffs attached to their motion for a preliminary injunction shows, Plaintiffs sought to enjoin the enforcement of sections 276.016(a)(1) and 31.129 only "pending final resolution of this case." App.82. The district court thus effectively entered a permanent injunction Plaintiffs did not ask for when the case was before the court at the preliminary injunction stage. The district court also enjoined "all Defendants . . . from enforcing Section 31.129 of the Texas Election

Code, as applied to a violation of Section 276.016(a)(1), against Plaintiffs." App.40. But only Longoria, not Morgan, challenged the enforcement of section 31.129, and the only defendant Longoria named in that claim was the Attorney General. App.257-58. "[T]he unusual nature of the District Court's order . . . further underscores the wisdom of the *Purcell* principle, which seeks to avoid this kind of judicially created confusion." *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

In short, the *Purcell* principle is designed to avoid the kind of confusion, unfairness, and loss of voter confidence risked by the district court's injunction—which changes the permissible government communications about applying to vote by mail only a week before such applications must be received by election officials. Some of the Supreme Court's decisions suggest that the *Purcell* principle "is absolute and that a district court may *never* enjoin a State's election laws in the period close to an election." *Merrill*, 2022 WL 354467, at *2 (Kavanaugh, J., concurring). But at the very least, the *Purcell* principle means that Plaintiffs must show that "the underlying merits are entirely clearcut" in their favor "to overcome the State's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." *Id.* As explained below, Plaintiffs can make no such showing here.

## II. The Balance of the Traditional Stay Factors Weighs in Favor of Staying the District Court's Injunction.

### A. The Attorney General is likely to succeed on the merits.

The Attorney General is likely to succeed on the merits for at least two independent reasons. First, Plaintiffs' claims fail on the merits as a matter of law. Section 276.016(a) does not threaten Plaintiffs' private free-speech rights because it affects

only government speech, not speech delivered in a personal capacity. As a result, section 276.016(a) is not subject to First Amendment scrutiny. Second, Plaintiffs cannot overcome sovereign immunity because they do not plausibly allege that the Attorney General will bring enforcement actions against Plaintiffs for the conduct that Plaintiffs claim is protected.

### 1. Section 276.016(a) does not violate the First Amendment.

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). Governments are entities that can speak only through their agents. Thus, whether a government employee engages in private speech or government speech depends on the capacity in which he speaks. "[P]ublic employees mak[ing] statements pursuant to their official duties . . . are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Any "speech *made pursuant to a public employee's official duties*" triggers the *Garcetti* rule and cannot qualify as private speech protected by the First Amendment. *Anderson v. Valdez*, 845 F.3d 580, 593 (5th Cir. 2016).

Section 276.016(a)(1) follows this rule precisely. That section applies only when a public official or election official is "acting in an official capacity." Tex. Elec. Code § 276.016(a). Because of that limitation, it applies only to government speech, not private speech. Morgan recognized this in her deposition and her declaration. *See* App.164; App.78. Longoria likewise confirmed that she is concerned with the effect that SB1 has on how she performs her official job functions rather than her private speech. *See* App.137 (confirming her testimony that she is "unable to fulfill [her]

sworn duty of Elections Administrator" and listing "portions of [her] job as Elections Administrator" she is "unable to fulfill"). According to Longoria, she is deterred "from engaging in communications" that "are a central part of [her] duties as an elections administrator." App.71.

The regulation of such government speech does not violate the First and Fourteenth Amendments. The Supreme Court has recognized that "[t]he involvement of public officials in advocacy may be limited by law, regulation, or practice." *Pleasant Grove*, 555 U.S. at 468. And this Court has explained that public employees "may well be obliged to follow the dictates of [state law] as 'government speech.'" *City of El Cenizo v. Texas*, 890 F.3d 164, 184 (5th Cir. 2018) (quoting *Garcetti*, 547 U.S. at 421). Even viewpoint-based rules on government speech are constitutional: "a state may endorse a specific viewpoint and require government agents to do the same." *Id.* at 185. That is because "speech made pursuant to a public employee's official duties" is simply "unprotected." *Anderson*, 845 F.3d at 593 (emphasis omitted). Whenever a public employee's speech is delivered "in the course of performing his job," that speech "is not protected by the First Amendment." *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (per curiam).

The district court offered two grounds for distinguishing *Garcetti* and its progeny, but both distinctions fail. First, that Plaintiffs are local employees and not state employees, *see* App.30 & n.4, is a distinction without a difference. "A political subdivision . . . is a subordinate unit of government created by the State to carry out delegated governmental functions." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009). States routinely require local officials to effectuate state policies by

implementing state statutes, including with regard to elections. *See, e.g.*, *Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291 (5th Cir. 2021). The federal Constitution does not give local governments or local officials autonomy from the state legislature. "[A] political subdivision, 'created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *Pocatello Educ. Ass'n*, 555 U.S. at 363 (quoting *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933)). While the federal government lacks power to commandeer state officials, "Texas can 'commandeer' its municipalities in this way." *City of El Cenizo*, 890 F.3d at 191.

Second, the district court wrongly concluded that *Garcetti* authorizes only employer discipline, such as terminating employment, not criminal prosecution. *See* App.30-31. Although the Supreme Court considered "employer discipline" in *Garcetti*, 547 U.S. at 421, the government-speech rationale is not so limited. This Court has confirmed that official-capacity speech is "unprotected." *Anderson*, 845 F.3d at 593; *see also Williams*, 480 F.3d at 694. This is not a balancing test in which the severity of the penalty might enter into the calculus. When the First Amendment provides no protection, it provides no protection. The First Amendment thus provides government speech the same amount of protection against criminal prosecution as it does against termination: none. *See City of El Cenizo*, 890 F.3d at 181 n.11 ("When a state is allowed to substantively regulate conduct, it must be able to impose reasonable penalties to enforce those regulations."). That is why both the Supreme Court and this Court have invoked the employer-speech framework when considering laws subjecting government employees to civil penalties for unlawful speech. *See United*

*States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 460 (1995) (applying the *Pickering* balancing test to a statute that was enforced by "[t]he Attorney General" through "a civil action to recover a penalty"); *City of El Cenizo*, 890 F.3d at 184-85 (discussing *Garcetti* while analyzing a statute enforced through, among other options, monetary civil penalties).

Even if the district court was right that unprotected speech becomes protected in the context of a criminal prosecution (it is not), that would not help Longoria's claim against the Attorney General. The two forms of relief expressly mentioned in section 31.129 are consistent with employer discipline: "termination of the person's employment and loss of the person's employment benefits." Tex. Elec. Code § 31.129(c). Longoria's claim would thus still fail insofar as she seeks to prevent a civil enforcement action terminating her employment or employment benefits.

### 2.    Plaintiffs cannot overcome sovereign immunity.

Sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," but only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (footnote omitted). "Although the precise scope of the requirement for a connection has not been defined, the plaintiff at least must show the defendant has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quotation marks omitted).

The only claim against the Attorney General in Plaintiffs' amended complaint is a claim by only Longoria against the Attorney General to enjoin any attempt by the Attorney General to civilly prosecute her for a violation of section 276.016(a)(1) using section 31.129. App.257-58. But Longoria has not shown any connection between the Attorney General and sections 276.016(a)(1) and 31.129.

Although the district court pointed to the Attorney General's role in the investigation of criminal violations of the Election Code, App.23-24 (citing Tex. Elec. Code § 273.021), the district court acknowledged that, under current Texas law, the Attorney General lacks the authority to criminally prosecute violations of section 276.016(a)(1). App.23. That alone is enough to show that the Attorney General does not have a sufficient connection to the criminal enforcement of section 276.016(a)(1) for the purposes of *Ex parte Young*. *See Tex. Democratic Party*, 978 F.3d at 179.

The district court nonetheless concluded that the Attorney General had a sufficient connection to the civil enforcement of section 276.016(a)(1) through section 31.129 based on the Attorney General's history of filing "civil lawsuits against election officials" and mandamus actions and the possibility that he might file similar actions in the future. App.24-26. There are at least three fundamental flaws with that conclusion. First, the district court's reliance on the Attorney General's ability to and history of filing mandamus actions is misplaced. Mandamus actions are distinct from civil enforcement actions under section 31.129; indeed, Plaintiffs did not challenge the Attorney General's authority to file mandamus petitions. Second, as the district court acknowledged, App.24, it is far from clear that the Attorney General has the authority to file a civil enforcement action under section 31.129. Third, even

if the Attorney General has that authority, the district court and Plaintiffs have failed to show that the Attorney General has "a demonstrated willingness" to exercise that authority with respect to violations of section 276.016(a)(1) in particular. As this Court recognized in *City of Austin v. Paxton*, 943 F.3d 993, that the Attorney General has enforced "*different* statutes under *different* circumstances does not show that he is likely to do the same here," 943 F.3d at 1001-02.

The district court attempted to distinguish *City of Austin* on the grounds that the Attorney General has "demonstrated a willingness to enforce civil provisions of the Election Code regulating applications to vote by mail against election officials." App.25-26. But analysis at that level of generality flies in the face of *City of Austin*: the civil actions the district court pointed to, App.24, involved different statutes addressing different aspects of voting by mail—in other words, different circumstances than soliciting the submission of applications to vote by mail. *See City of Austin*, 943 F.3d at 1003 ("The City fails to show how the Attorney General's past interventions in suits involving municipal ordinances demonstrate that there is 'a significant possibility' that the Attorney General will inflict 'future harm' by acting to enforce 'the supremacy of [§ 250.007]' over the Ordinance.").

Because Longoria has failed to show the requisite connection between the Attorney General and the enforcement of section 276.016(a)(1) through section 31.129, Longoria's claim against the Attorney General does not fit the *Ex parte Young* exception and thus is barred by sovereign immunity.

## B. The Attorney General will suffer irreparable harm if the injunction is not stayed pending appeal.

"When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014) (quoting *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013)). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration in original) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). Those harms are especially acute here, because the injunction increases the possibility of voter confusion after voting has started, in violation of the *Purcell* principle. *Supra* part I.

## C. The balance of the remaining stay factors favor the Attorney General.

The fourth stay factor—where the public interest lies—plainly favors the Attorney General. When a state official sued in her official capacity appeals, her "interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391. "Moreover, 'a temporary stay here, while the court can consider argument on the merits, will minimize confusion among both voters and trained election officials—a goal patently within the public interest given the extremely fast-approaching election date.'" *Richardson*, 978 F.3d at 243 (quoting *Tex. Democratic Party*, 961 F.3d at 412).

The remaining factor—"whether issuance of the stay will substantially injure the other parties in the proceeding," *Nken*, 556 U.S. at 426—"does not outweigh the

other factors," *Richardson*, 978 F.3d at 243. The Court's inquiry under that factor "is limited to determining irreparable harm not in denying the plaintiffs' requested relief outright but in temporarily staying the injunction pending a full appeal." *Id.* (quoting *Tex. Democratic Party*, 961 F.3d at 412 (emphasis omitted)). "Because of the likelihood that the [Attorney General] will succeed on the merits, combined with the irreparable harm inflicted on the state and its citizens by the injunction, the balance of harms weighs in favor of the [Attorney General]." *Id.*

## Conclusion

The Court should stay the district court's preliminary injunction pending resolution of this appeal, and alternatively, enter a temporary administrative stay while it considers this motion. The Court should also expedite consideration of this appeal.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Judd E. Stone II
Solicitor General

Benjamin D. Wilson
Deputy Solicitor General

/s/ Cody Rutowski
Cody Rutowski
Assistant Solicitor General
Cody.Rutowski@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Appellant
Warren K. Paxton,
in his official capacity as the
Attorney General of Texas

## Certificate of Conference

On February 16, 2022, I conferred by email and phone with Sean Morales-Doyle, counsel for Plaintiffs-Appellees Isabel Longoria and Cathy Morgan, and by phone with Jonathan Fombone, counsel for Plaintiff-Appellee Isabel Longoria. Plaintiffs-Appellees oppose the stays requested in this motion.

/s/ Cody Rutowski
Cody Rutowski

## Certificate of Compliance with Rule 27.3

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this motion, counsel for Appellant contacted the clerk's office and opposing counsel to advise them of Appellant's intent to file this motion.

- The facts stated herein supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested by 5:00 PM on Thursday, February 17, or alternatively, Appellant requests a temporary administrative stay pending that review at the earliest possible date.

- True and correct copies of relevant orders and other documents are attached in the Appendix to this motion, filed separately.

- This motion is being served at the same time it is being filed.

/s/ Cody Rutowski
Cody Rutowski

## CERTIFICATE OF SERVICE

On February 16, 2022, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Cody Rutowski
CODY RUTOWSKI

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5053 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Cody Rutowski
CODY RUTOWSKI